UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN HERNANDEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>OLIVIA BORBOLLA,<br><br>        Defendant. | Case No. 1:19-cv-01698-BAK (HBK) (PC)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT[1]<br><br>(Doc. No. 23)<br><br>Clerk of Court to close the case. |

    Pending before the Court is Defendant Olivia Borbolla's ("Defendant" or "Borbolla") motion for summary judgment. (Doc. No. 23, "MSJ"). The MSJ contained a *Rand*[2] warning and notice under Local Rule 260(b). (Doc. No. 23-3). On January 13, 2022, the Court again advised Plaintiff of Local Rule 260(b) and directed a response to the MSJ within twenty-one days. (Doc. No. 27). Plaintiff elected not to file a response in opposition to the MSJ. Having considered the record and finding no genuine dispute of material fact that Defendant did not act or fail to act with deliberate indifference to Plaintiff's serious medical needs in violation of Plaintiff's Eighth Amendment rights, the Court grants Defendant's MSJ.

---

[1] Both parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1) and Local Rule 301. (Doc. Nos. 7, 21).

[2] *Rand v. Rowland*, 154 F. 3d 952, 962–63 (9th Cir. 1988) (en banc).

# I. BACKGROUND

Plaintiff Brian Hernandez ("Plaintiff"), a state prisoner, initiated this action by filing a *pro se* civil rights complaint under 42 U.S.C. § 1983 on November 27, 2019. (Doc. No. 1). Plaintiff is proceeding on his first amended complaint filed on July 7, 2020 (Doc. No. 9, "FAC"), which alleges a cognizable Eighth Amendment medical indifference claim against Defendant. (Doc. No. 10). Defendant answered the FAC. (Doc. No. 18). After discovery and in compliance with the scheduling order (Doc. No. 19), Defendant timely filed the instant MSJ on December 2, 2021. (Doc. No. 23). In support, Defendant submitted a statement of undisputed material facts (Doc. No. 23-2 at 1); Plaintiff's deposition (*Id.* at 11; Doc. No. 24); the declaration of O. Borbolla (Doc. No. 23-2 at 29); the declaration of P. Williams (*Id.* at 96); and Plaintiff's medical records and Health Care Services Request Forms (*Id.* at 34, "7362"). Plaintiff filed no materials in opposition to the MSJ.

# II. APPLICABLE LAW

**A. Summary Judgment Standard**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material where it is (1) relevant to an element of a claim or a defense under the substantive law and (2) would affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1987).

The party moving for summary judgment bears the initial burden of proving the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party has met this burden, the nonmoving party must go beyond the pleadings and set forth specific facts, by affidavits, deposition testimony, documents, or discovery responses, showing there is a genuine issue that must be resolved by trial. Fed. R. Civ. P. 56(c)(1); *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021). A mere "scintilla of evidence" in support of the nonmoving party's position is insufficient. *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Rather, the evidence must allow a reasonable juror, drawing all inferences in favor of the nonmoving party, to return a verdict in

1  that party's favor. *Id.*

2  A court must view the evidence in the light most favorable to the nonmoving party.
3  *Tolan v. Cotton*, 572 U.S. 650, 655 (2014). It may not weigh evidence or make credibility
4  determinations. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017). Conclusory or
5  speculative testimony in affidavits and supporting papers is insufficient to raise a genuine issue
6  of fact and defeat summary judgment. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984
7  (9th Cir. 2007); *see* Fed. R. Civ. P. 56(c)(2). Furthermore, the Ninth Circuit has "held
8  consistently that courts should construe liberally motion papers and pleadings filed by *pro se*
9  inmates and should avoid applying summary judgment rules strictly." *Soto v. Sweetman*, 882
10 F.3d 865, 872 (9th Cir. 2018) (quoting *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir.
11 2010)).

12 While prisoners are relieved from strict compliance, they still must "identify or submit
13 some competent evidence" to support their claims. *Soto*, 882 F.3d at 872. A plaintiff's verified
14 complaint may serve as an affidavit in opposition to summary judgment if based on personal
15 knowledge and specific facts admissible in evidence. *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14
16 (9th Cir. 2000) (en banc). However, a complaint's conclusory allegations, unsupported by
17 specifics facts, will not be sufficient to avoid summary judgment. *Arpin v. Santa Clara Valley*
18 *Transp. Agency,* 261 F.3d 912, 922 (9th Cir. 2001). Where a plaintiff fails to properly challenge
19 the facts asserted by the defendant, the plaintiff may be deemed to have admitted the validity of
20 those facts. Fed. R. Civ. P. 56(e)(2).

21 **B. Eighth Amendment Medical Deliberate Indifference**

22 Deliberate indifference to the serious medical needs of an incarcerated person constitutes
23 cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble,* 429
24 U.S. 97, 104 (1976). A prisoner seeking relief for an Eighth Amendment violation must show
25 that the officials acted with deliberate indifference to the threat of serious harm or injury to an
26 inmate. *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir. 2016); *Labatad v. Corr.*
27 *Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013). Analysis of a "deliberate indifference" claim
28 requires a two-pronged inquiry: the objective seriousness of the plaintiff's medical need and the

1  defendant's subjective state of mind.  *See McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.
2  1992), *overruled on other grounds*, *WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir.
3  1997) (en banc).

4      With respect to the objective prong, a "serious" medical need exists if the failure to treat
5  "could result in further significant injury" or the "unnecessary and wanton infliction of pain."
6  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).  To satisfy the subjective prong, the
7  plaintiff must show that a prison official must knew of and disregarded a serious risk of harm.
8  *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  Such indifference may appear when a prison
9  official intentionally denies or delays care, or intentionally interferes with treatment once
10  prescribed.  *Estelle,* 429 U.S. at 104–05.

11      If, however, the official failed to recognize a risk to the plaintiff—that is, the official
12  "*should* have been aware" of a risk, but in fact was not—the official has not violated the Eighth
13  Amendment.  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 668 (9th Cir. 2021) (emphasis in
14  original).  That is because deliberate indifference is a higher standard than medical malpractice.
15  Thus, a difference of opinion between medical professionals—or between the plaintiff and
16  defendant—generally does not amount to deliberate indifference.  *See Toguchi v. Chung*, 391
17  F.3d 1051, 1057 (9th Cir. 2004).  An argument that more should have been done to diagnose or
18  treat a condition generally reflects such differences of opinion and not deliberate indifference.
19  *Estelle*, 429 U.S. at 107.  To prevail on a claim involving choices between alternative courses of
20  treatment, a plaintiff must show that the chosen course "was medically unacceptable under the
21  circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's
22  health.  *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016).

23      Neither will an "inadvertent failure to provide medical care" sustain a claim, *Estelle*, 429
24  U.S. at 105, or even gross negligence.  *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062,
25  1082 (9th Cir. 2013).  Misdiagnosis alone is not a basis for a claim of deliberate medical
26  indifference.  *Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012).  A delay in treatment,
27  without more, is likewise insufficient to state a claim.  *Shapley v. Nev. Bd. of State Prison*
28  *Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).  It is only when an official both <u>recognizes</u> and

<u>disregards</u> a risk of substantial harm that a claim for deliberate indifference exists. *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc). A plaintiff must also demonstrate harm from the official's conduct. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Additionally, the defendant's actions must have been both an actual and proximate cause of this harm. *Lemire*, 726 F.3d at 1074.

### III.  ANALYSIS

**A. Allegations of Medical Indifference in Plaintiff's First Amended Complaint**

According to the FAC, while Plaintiff was incarcerated at California State Prison in Corcoran, California ("Corcoran"), Defendant Borbolla prescribed him naproxen for his rheumatoid arthritis. (Doc. No. 9 at 3). Specifically, on January 7, 2019, Defendant dispensed naproxen to Plaintiff despite Defendant's knowledge of Plaintiff's severe stomach ulcers and bleeding and despite a prominent stomach bleeding warning on the naproxen medication label. (*Id.*) Immediately after being prescribed naproxen, Plaintiff began to experience stomach bleeding and repeatedly informed Defendant of his side effects. (*Id.*) Defendant downplayed the bleeding as a virus and did not treat Plaintiff. (*Id.* at 3–4).

A few days later, Plaintiff was admitted to an outside hospital in a life-threatening condition. (*Id.* at 4). Once at the hospital, it was determined that Plaintiff's severe stomach bleeding was caused by the naproxen. (*Id.*) Plaintiff asserts Defendant had full access to his medical records, and naproxen was known to cause stomach bleeding in susceptible patients like Plaintiff. He argues that "gross departures from accepted medical standards constitutes deliberate indifference." (*Id.* at 4).

**B. Undisputed Facts**

**1. Plaintiff's Failure to Oppose the Motion**

Plaintiff did not file an opposition to Defendant's MSJ, (*see* docket; *Rand* notice; Doc. No. 27), nor did Plaintiff submit a separate statement of undisputed facts as required by Local Rule 260(a). Where a party fails to oppose a motion for summary judgment, "Rule 56 is clear that although a court *may* deem facts admitted in the exercise of its discretion, it need not do so." *Warkentin v. Federated Life Ins. Co.*, 594 F. App'x 900, 902–03 (9th Cir. 2014) (alteration in

1  original); *see* Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment ("[T]he court may
2  choose not to consider [a] fact as undisputed, particularly if the court knows of record materials
3  that show grounds for genuine dispute").  A court, however, is not authorized to automatically
4  grant summary judgment to a defendant solely because a plaintiff fails to oppose the motion.
5  *Cristobal v. Siegel*, 26 F.3d 1488, 1494–95 & n.4 (9th Cir. 1994); *Martinez v. Stanford*, 323 F.3d
6  1178, 1182 (9th Cir. 2003).

7  Nonetheless, a complaint's conclusory allegations, unsupported by specifics facts, will not
8  be sufficient to avoid summary judgment.  *Arpin*, 261 F.3d at 922 (citing *Taylor v. List*, 880 F.2d
9  1040, 1045 (9th Cir. 1989)).  Where, as here, a party fails to properly support an assertion of fact
10 or fails to challenge the facts asserted by the moving party, the non-moving party may be deemed
11 to have admitted the validity of those facts.  *See* Fed. R. Civ. P. 56(e)(2).  Further, Local Rule
12 230(*l*) provides that the "[f]ailure of the responding party to file an opposition or to file a statement
13 of no opposition may be deemed a waiver of any opposition to the granting of the motion and may
14 result in the imposition of sanctions."  A court may grant an unopposed or inadequately opposed
15 motion for summary judgment if the supporting papers are themselves sufficient to warrant
16 granting the motion and do not on their face reveal a genuine issue of material fact.  *See Henry v.*
17 *Gill Indus.*, 983 F.2d 943, 950 (9th Cir. 1993).  The Court considers the entire record and deems
18 only those facts true which are properly supported by evidence and otherwise deemed unopposed
19 by Plaintiff.

20   **2. Defendant's Evidence**

21  Defendant Borbolla is a registered nurse who, at the relevant time, worked at Corcoran.
22 (Def. Statement of Undisputed Facts ("SUF"), Doc. No. 23-2 at ¶ 2).  On December 12, 2018, Dr.
23 Pearce, who was Plaintiff's primary care provider, prescribed naproxen to Plaintiff for his
24 rheumatoid arthritis.  (*Id.* at ¶¶ 9–10).  Plaintiff had no prior history of stomach ulcers or bleeding
25 prior to seeing Dr. Pearce, and he did not tell Dr. Pearce that he had any such history of stomach
26 issues.  (*Id.* at ¶ 11).  Dr. Pearce also ordered laboratory tests and x-rays of Plaintiff's hand.  (*Id.*
27 at ¶ 15).

28

1    On December 28, 2018, Plaintiff submitted a CDC form 7362 Health Care Services
2    Request form ("7362") requesting a refill of his naproxen prescription. (*Id.* at ¶ 12).  Defendant
3    forwarded the 7362 to the pharmacy for refill.  (*Id.*).

4    On January 8, 2019, Defendant encountered Plaintiff in response to a 7362 complaining of
5    pain and immobility in his fingers, left arm, and right shoulder, and inability to perform his
6    inmate job duties.  (*Id.* at ¶¶ 14–16).  Plaintiff made no complaints of abdominal pain or abnormal
7    stools.  (*Id.* at ¶ 17).

8    Defendant next encountered Plaintiff on January 17, 2019, in response to a 7362 regarding a
9    lower tier chrono and physical therapy.  (*Id.* at ¶ 17).  Plaintiff admits that he was not experiencing
10   any stomach pain or bleeding in his digestive tract as of January 17, 2019.  (*Id.* at ¶ 19).  On the
11   same day, Plaintiff submitted a 7362 requesting a refill of his naproxen prescription.  (*Id.* at ¶ 18).
12   On January 18, 2019, Defendant reviewed the 7362, and the prescription was refilled. (*Id.*)

13   On January 25, 2019, Defendant again encountered Plaintiff in response to a 7362 dated
14   January 23, 2019, stating he received medical records and was overcharged for a co-payment.
15   (*Id.* at ¶ 20).  They discussed his 7362, as well his hands and his rheumatology consult.  (*Id.*)
16   Plaintiff made no complaints of abdominal pain or abnormal stools at this appointment.  (*Id.* at ¶
17   21).

18   In a 7362 dated January 29, 2019, Plaintiff complained, "Ms. Borbolla, I still have the
19   stomach virus . . . and had a stomach ache going on a week now and it won't go away.  We were
20   talking about a broad spectrum-antibiotic." (Doc. No. 23-2 at 94; SUF, Doc. No. 23-2 at ¶ 22).

21   On January 31, 2019, Defendant encountered Plaintiff in response to his 7362 dated
22   January 29, 2019.[3]  (*Id.* at ¶ 26).  At this appointment, Plaintiff informed Defendant that he had
23   been experiencing stomach pain for approximately one week; had not eaten in two days; the pain
24   increased with eating; the pain moved from different areas of his abdomen, moving down and
25   then up; his bowel movements were dark at first but now are formed and brown, although it was

26

27   [3] Although the SUF indicates that Defendant encountered Plaintiff on January 29, 2019, Defendant states
     in her declaration that she encountered Plaintiff on January 31, 2019, in response to a 7362 dated January
28   29, 2019. (SUF, Doc. No. 23-2 at 7, ¶ 26; Def. Decl., Doc. No. 23-2 at 31, ¶ 12).  This minor
     inconsistency is immaterial.

7

difficult to have a bowel movement.  (*Id.*).  Plaintiff denied nausea or vomiting.  Upon examining Plaintiff, Defendant noted Plaintiff had abdominal tenderness but no rebound tenderness in the right lower and upper quadrants.  His skin was pale, and his skin temperature was warm.  (*Id.*).

Defendant consulted with Nurse Practitioner F. Hernandez ("NP Hernandez") by phone, who directed that Plaintiff go to the Correctional Treatment Center for Kidney-Ureter-Bladder ("KUB") x-rays, which would then be reviewed by a health care provider in the Triage and Treatment Center.  (*Id.* at ¶ 27).  At Corcoran, KUB x-rays and test results are sent to the ordering practitioner and not to a registered nurse; therefore, Defendant did not directly receive the results of the KUB x-rays or laboratory tests ordered on January 31, 2019.  (*Id.* at ¶ 28).

On February 5, 2019, Defendant encountered Plaintiff on a 7362 submitted on February 4, 2019, noting he had not been contacted by any medical staff and asking if there was a prognosis.  (*Id.* at ¶ 29).  Defendant assessed Plaintiff and noted that he had constant pain in his abdomen; his abdomen appeared to be symmetric and was soft and tender with no rebound tenderness; bowel sounds present; he had last eaten the day before; and his last bowel movement was early that day.  (*Id.*).  Dr. Pearce also examined Plaintiff and incorrectly diagnosed Plaintiff's appendix as the source of the pain.  (*Id.* at ¶ 30).  Dr. Pearce referred Plaintiff to the on-site emergency room ("ER") at Corcoran.  (*Id.* at ¶ 31).  A physician at the ER reviewed the test and sent Plaintiff to an outside hospital, Adventist Health Bakersfield.  (*Id.* at ¶ 32).  There, Plaintiff was diagnosed with a duodenal ulcer with signs of recent bleeding.  (*Id.* at ¶ 33).

On February 13, 2019, Defendant encountered Plaintiff on a 7362 regarding a missed blood draw.  (Def. Decl., Doc. No. 23-2 at 32–33, ¶ 15).  Defendant learned that Plaintiff was diagnosed with an ulcer and was unable to take non-steroidal anti-inflammatory drugs, including naproxen.  (*Id.*)  After discussing Plaintiff's case with his primary care physician, Defendant provided Tylenol to Plaintiff, pending Plaintiff's follow-up appointment with his primary care provider.  (*Id.*)

**C.  The Undisputed Material Facts Show Defendant Was Not Deliberately Indifferent**

To maintain a claim for deliberate indifference to serious medical needs, a prisoner must a make a two-pronged showing: (1) he has a serious medical need, and (2) the prison official

1  knew of and disregarded the risk to the prisoner's serious medical need, causing harm. *Jett*, 439
2  F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059).

### 1. First Prong: Serious Medical Need

Although Defendant does not address the first prong—whether Plaintiff had a serious medical need for treatment of his ulcer and abdominal pain, including discontinuation of naproxen—Defendant appears to concede that Plaintiff's medical need was serious. *See George v. Jones*, No. C 06-2800 CW (PR), 2008 WL 859439, at *7 (N.D. Cal. Mar. 28, 2008) (noting that a stomach ulcer is a serious medical need); *see also Saddozai v. Lomu*, No. 18-04047 BLF (PR), 2020 WL 4923973, at *6 (N.D. Cal. Aug. 21, 2020) (indicating that the plaintiff's severe abdominal pain and vomiting of blood reflected serious medical needs requiring treatment), *aff'd sub nom. Saddozai v. Bolanos*, No. 20-16862, 2022 WL 501124 (9th Cir. Feb. 18, 2022).

The Court assumes for purposes of this Order that the first prong is satisfied and proceeds to the second prong—whether Defendant was deliberately indifferent to Plaintiff's serious medical need. Specifically, Defendant maintains the evidence demonstrates she addressed Plaintiff's symptoms and concerns; was not aware that Plaintiff previously suffered from stomach ulcers and bleeding; did not prescribe naproxen to Plaintiff; she had no encounter with Plaintiff on January 22, 2019; and even if there was such an encounter, she properly addressed Plaintiff's complaint of stomach pain. (Doc. No. 23-1 at 8–11).

### 2. Second Prong: Defendant's Knowledge of Risk of Serious Harm

To prove deliberate indifference, a plaintiff must show that the defendant knew of and disregarded the risk to the prisoner's serious medical need, causing harm. *Farmer*, 511 U.S. at 837. The undisputed evidence here establishes: (1) Defendant did not know of and disregard Plaintiff's history of stomach bleeding and ulcers, and (2) Defendant did not engage in "a purposeful act or failure to respond to a prisoner's pain or possible medical need . . . ." *Jett*, 439 F.3d at 1096.

Issuing a prescription for medication is beyond the scope of Defendant's practice as a registered nurse. (SUF, Doc. No. 23-2 at ¶ 13). Plaintiff was prescribed naproxen by his primary care provider, Dr. Pearce, on December 12, 2018. (*Id.* at ¶ 9). Defendant facilitated the

9

1  refilling of Plaintiff's prescription for naproxen, but only at Plaintiff's requests for refills in
2  7362s dated December 27, 2018 and January 17, 2019.  (*Id.* at ¶¶ 12, 18).

3  Plaintiff asserts Defendant had full access to his medical records and should have known that naproxen was known to cause stomach bleeding to a susceptible patient such as Plaintiff. (Doc. No. 9 at 4).  The record belies Plaintiff's assertion.  Instead, when Plaintiff was transferred to Corcoran, he underwent an Initial Health Screening that did not indicate a history of stomach ulcers or gastrointestinal bleeding.  (Def. Decl., Doc. No. 23-2 at 29, 35–39).  Moreover, during Defendant's encounters with Plaintiff on January 8, 17, and 25, 2019, Plaintiff made no complaints of abdominal pain or abnormal stools.  (SUF, Doc. No. 23-2 at ¶¶ 14, 17, 19, 21).

In his 7362 dated January 29, 2019, Plaintiff stated: "Ms. Borbolla, I still have the stomach virus.  I've had a stomach ache going on a week now and it won't go away.  We were talking about a broad spectrum-antibiotic."  (Doc. No. 23-2 at 66).  This is the first indication in Plaintiff's medical record that he was suffering from abdominal pain.  However, this 7362 does not contain sufficient information to indicate that Plaintiff's "stomach ache" was due to ulcers and abdominal bleeding caused by naproxen.

When Defendant encountered Plaintiff on the same day for this 7362, Plaintiff described his abdominal pain, increased pain with eating, and abnormal bowel movements.  (*Id.* at ¶ 26). Based on these complaints and after an examination of Plaintiff, Defendant consulted with Nurse Practitioner F. Hernandez ("NP Hernandez"), who ordered tests for Plaintiff's condition.  (*Id.* at ¶ 29).  The uncontroverted evidence shows that, at this point, Defendant was only aware that Plaintiff likely had a medical condition serious enough to warrant further consultation with NP Hernandez.  Only upon testing, after referral by Dr. Pearce to the Corcoran on-site emergency room and referral by the ER to Adventist Health Bakersfield, was Plaintiff diagnosed with an ulcer.  (SUF, Doc. No. 23-2 at ¶ 13).  This is the first time that Defendant knew that Plaintiff had ulcer and was unable to take non-steroidal anti-inflammatory drugs, including naproxen.  (*Id.*)

The undisputed evidence demonstrates that, until Adventist Health Bakersfield returned its diagnosis, Defendant was not subjectively aware that Plaintiff suffered from ulcers or abdominal bleeding resulting from the naproxen he had been taking.  Since Defendant was not

aware of and did not draw the inference that Plaintiff had these serious medical issues, Defendant cannot be liable for deliberate indifference.

### 3. Second Prong: Defendant's Response to Plaintiff's Serious Medical Needs

Once Defendant was aware of Plaintiff's serious need, Plaintiff must show that Defendant's response to the need was deliberately indifferent by showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted). The undisputed facts establish that Defendant did not respond with deliberate indifference to Plaintiff's serious medical need to avoid naproxen due with abdominal bleeding and ulcers.

As noted earlier, Dr. Pearce prescribed naproxen to treat Plaintiff's arthritis on December 12, 2018.  (SUF, Doc. No. 23-2 at ¶ 9). On December 27, 2018, and January 18, 2019, Defendant facilitated the refills of Plaintiff's prescription for naproxen upon Plaintiff's request. (*Id.* at ¶¶ 12, 18).

On January 8, 2019, and January 17, 2019, Defendant encountered Plaintiff on unrelated matters.  Plaintiff did not complain about abdominal pain, abdominal bleeding, or abnormal stools at either appointment and instead requested a refill of naproxen at the January 17, 2019, appointment. (*Id.* at ¶¶ 16–19).  Therefore, Defendant had no reason to deny the refill or discuss Plaintiff's abdominal issues with NP Hernandez or Dr. Pearce at that time.

Plaintiff next encountered Defendant on January 25, 2019 in reference to his 7362 dated January 23, 2019, regarding medical records and a co-payment overcharge. (*Id.* at ¶ 20). Defendant indicated that she would assist him with his medical records and noted that his hands were pale. (*Id.*)  Plaintiff advised that he was awaiting a rheumatology appointment. (*Id.*). This 7362 does not include any complaints of abdominal pain or other abdominal issues, so there was nothing to alert Defendant to take any other action on this 7362.

When Plaintiff submitted a 7362 on January 29, 2019, indicating he had a stomach virus because he had a "stomach ache" lasting for a week, Defendant saw Plaintiff the same day. (*Id.* at ¶¶ 21, 26). Plaintiff described his pain and said he had not eaten in two days and had abnormal bowel movements and stool. (*Id.*)  After conducting a physical examination of

1  Plaintiff, Defendant immediately contacted NP Hernandez and set in motion the testing that
2  eventually resulted in the ulcer diagnosis. (*Id.* at ¶¶ 20). When Defendant encountered Plaintiff
3  again on February 13, 2019, she provided Plaintiff with Tylenol—rather than naproxen—for his
4  arthralgia with approval from Dr. Pearce. (Def. Decl., Doc. No. 23-2 at 32–33, ¶ 15).

5  At the time Defendant assisted with refilling Plaintiff's naproxen prescription at his
6  request, she did not know, nor have a reason to suspect, that naproxen was the cause of
7  Plaintiff's abdominal pain and should be discontinued. When Defendant examined Plaintiff and
8  learned of the seriousness of Plaintiff's complaints, she immediately informed NP Hernandez.
9  After the ulcer diagnosis was made, Defendant administered Tylenol rather than naproxen. The
10 undisputed evidence demonstrates that Defendant responded to Plaintiff's complaints
11 appropriately.

### 4. Alleged Encounter on January 22, 2019

At his deposition, Plaintiff testified he had an encounter with Defendant on January 22, 2019, during which he told Defendant that he was having severe abdominal pain and black stools. Plaintiff pointed to the language of the 7362 dated January 29, 2019 as evidence this earlier discussion with Defendant had occurred. (Pl. Dep., Doc. No. 23-2 at 18–21). Plaintiff claims Defendant told him that his symptoms were most likely due to a stomach virus, the symptoms would go away after a week, and he should drink water. (*Id.* at ¶ 24).

Defendant disputes any encounter with Plaintiff on January 22, 2019.[4] (Def. Mem., Doc. No. 23-1 at 10). As proof, Defendant submits a list of Plaintiff's appointments attached to the declaration of P. Williams, the Litigation Coordinator and custodian of records for California Department of Corrections and Rehabilitation ("CDCR"). (Williams Decl., attach. 1, Doc. No. 23-2 at 96–113). According to Williams, CDCR tracks inmate appointments, including medical and nursing appointments. (*Id.* at 96). A list of Plaintiff's inmate appointments does not reflect a medical/nursing appointment on January 22, 2019. (*See id.* at 112). Defendant argues that, because the record evidence contradicts Plaintiff's testimony, the Court should decline to adopt

---

[4] In her declaration, Defendant does not mention an encounter with Plaintiff on January 22, 2019.

1  Plaintiff's version of facts and disregard Plaintiff's testimony concerning the January 22, 2019,
2  encounter with Defendant.  (Def. Mem., Doc. No. 23-1 at 10).

3  The Court finds Defendant's argument unpersuasive.  It is undisputed Defendant
4  encountered Plaintiff on January 8, 2019, in regard to complaints about his fingers, arm, and
5  shoulder.  (SUF, Doc. No. 23-2 at ¶ 14).  However, the list of Plaintiff's inmate appointments
6  does not reflect a medical/nursing appointment on January 8, 2019, contrary to Defendant's
7  declaration.  (Williams Decl., attach. 1, Doc. No. 23-2 at 112; Def. Decl., 23-2 at 30, ¶ 8).  Given
8  this discrepancy, the Court cannot conclude that the list of inmate appointments is entirely
9  accurate.  Therefore, the mere absence of an entry for a medical/nursing appointment on the list
10 does not establish its nonoccurrence.

11 The Court nonetheless finds Plaintiff's testimony concerning this encounter does not
12 create a genuine dispute of material fact because it would not alter the outcome of the case.  *See*
13 *Anderson*, 477 U.S. at 247.  Even if an encounter did occur on January 22, 2019, as described by
14 Plaintiff, this exchange does not establish that Defendant knew or inferred that Plaintiff had an
15 ulcer and could not take naproxen. To the contrary, Defendant's alleged statement indicates she
16 subjectively believed Plaintiff had a stomach virus.  (*See* Pl. Dep., Doc. No. 23-2 at 18–20).

17 At most, the Court construes the FAC to allege negligent misdiagnosis by Defendant, but
18 courts have consistently held that misdiagnosis does not create liability under the Eighth
19 Amendment.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012) (doctor's decision not
20 to operate because he incorrectly concluded plaintiff was not suffering from a hernia could not
21 establish Eighth Amendment violation); *see also Griffith v. Franklin Cty., Ky.*, 975 F.3d 554, 573
22 (6th Cir. 2020) (negligent failure to take more aggressive steps to monitor plaintiff's health would
23 not violate Eighth Amendment); *Self v. Crum*, 429 F.3d 1227, 1233 (10th Cir. 2006) (negligent
24 failure to diagnose respiratory condition did not violate Eighth Amendment).  And, while the
25 complete denial of medical attention may constitute deliberate indifference, *Toussaint v.*
26 *McCarthy*, 801 F.2d 1080, 1111 (9th Cir. 1986), an argument that more should have been done to
27 diagnose or treat a condition generally reflects only a difference of opinion between the plaintiff
28 and healthcare providers rather than deliberate indifference.  *Estelle*, 429 U.S. at 107.  To prevail

on a claim involving choices between alternative courses of treatment, a plaintiff must show that the chosen course "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk" to the plaintiff's health. *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citation omitted); *accord Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Thus, even assuming Defendant encountered Plaintiff on January 22, 2019, these allegations do not support a finding that Defendant acted or failed to act with deliberate indifference. Accepting Plaintiff's complaint that he was experiencing a stomachache lasting two to three days and dark stools on this date, without having a history of ulcers or abdominal bleeding, Defendant's diagnosis that Plaintiff had a stomach virus was not medically unacceptable. As indicated in his 7362 dated January 29, 2019, Plaintiff also believed a stomach virus could be the cause of his pain. Further, whether Defendant's misdiagnosis constituted negligence, gross negligence, or even medical malpractice, this misdiagnosis does not rise to a constitutional violation. *See Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Defendant, while not ordering tests or consulting with the nurse practitioner or Plaintiff's primary care physician, did not deny Plaintiff medical attention. On her belief that Plaintiff may have been suffering from a stomach virus, Defendant advised Plaintiff to drink water and wait a week for the virus to pass. When Plaintiff submitted a 7362 complaining of persistent stomach pain seven days later, Defendant performed a physical examination of Plaintiff that same day, without delay, and consulted the nurse practitioner for further diagnosis and treatment of Plaintiff's condition. Under these circumstances, even giving Plaintiff the benefit of the January 22, 2019, encounter as set forth in his deposition testimony, the Court does not find this testimony creates a genuine issue of material fact about the reasonableness of Defendant's actions. The undisputed evidence establishes Defendant had no reason to suspect Plaintiff was suffering from an ulcer or otherwise failed to treat Plaintiff to sustain a finding that Defendant violated Plaintiff's Eighth Amendment rights.

////

**D. Qualified Immunity**

In the alternative, Defendant asserts a right to qualified immunity. (Doc. No. 23-1 at 11–12). The defense of qualified immunity shields government officials from liability. *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). Qualified immunity only becomes relevant if a court determines that a constitutional violation has occurred. Because the Court finds as a matter of fact and law that no constitutional violation occurred, the Court need not determine whether Defendant is entitled to qualified immunity.

Accordingly, it is ORDERED:

1. Defendants' Motion for Summary Judgment (Doc. No. 23) is GRANTED.
2. The Clerk of Court is directed to enter judgment in favor of Defendant, terminate all deadlines, and close this case.

Dated:   September 8, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE